**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1) **JERI GILL MCKENZIE and** | ) | |
| 2) **ROBERT MCKENZIE** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | **Case No. 21-CV-258-JWB** |
| | ) | |
| 1) **HANOVER INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO EXCLUDE THE EXPERT
TESTIMONY OF DALLAS KAEMMERLING AND BRIEF IN SUPPORT**

---

Plaintiffs, Jeri Gill McKenzie and Robert McKenzie ("Plaintiffs") respond in opposition to Defendant, Hanover Insurance Company's ("Defendant") Motion to Exclude the Expert Testimony of Dallas Kaemmerling and files their brief in support of their Response. Plaintiffs respectfully request that the motion be denied and would show the Court as follows:

## PRELIMINARY STATEMENT

Defendant's Motion wastes this Court's time and should be denied. To start, Defendant claims Dallas Kaemmerling's ("Kaemmerling") methodology is unreliable but completely ignores the fact that Defendant's own causation expert uses the same court approved methodology in forming his opinion. Then Defendant tries to claim Kaemmerling violated Rule 26(a) by not disclosing certain facts despite his expert report clearly reiterating those exact facts throughout his report. Finally, Defendant has chosen gamesmanship by only now complaining of a minor technicality regarding Kaemmerling's list of previous expert testimony instead of conferring beforehand. At worse this requires supplemental production, which Plaintiffs have already served.

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................ **3**

**I.  SUMMARY** .................................................................................................................... **5**

**II.  ARGUMENTS AND AUTHORITY** ............................................................................ **5**

   **A.  Dallas Kaemmerling's methodology is reliable because it is based on his experience, on-site observations, industry standards and a review of reliable weather data.** ........ 5

      **1. Mr. Kaemmerling's methodology has been approved by federal courts and is used by Defendant's own causation expert.** ..................................................................... 7

         *a.  Kaemmerling's physical inspection provided the necessary facts that with his experience enable him to determine the damage is predominantly from hail.* ....... 9

         *b.  Historical information such as weather data supports Kaemmerling's opinion that the April 22, 2020, hail storm was the cause of damage.* .............................. 10

         *c.  Kaemmerling explains in detail how his experience enables him to determine the cause of damage was a recent hailstorm.* ................................................. 12

         *d.  Kaemmerling's estimate only includes items that must be repaired or replaced as a result of the April 22, 2020 hail storm.* ................................................ 13

      **2. Alleged factual deficiencies go to the weight of an expert's opinion not admissibility, and is better suited for cross-examination.** .................................................... 14

      **3. Mr. Kaemmerling does not offer expert opinions on weather patterns but merely relies on government weather data to help determine the cause of damage.** ........... 16

   **B.  As of the date of this filing, Mr. Kaemmerling has disclosed all information required under Rule 26(a)(2)(B).** ................................................................................. 18

      **1. Dallas Kaemmerling disclosed the basis for his opinions are his experience, a physical site inspection, the characteristics of the damages, and weather data.** ....... 18

      **2. Kaemmerling does not keep a list of his previous expert testimony from the past four years but has produced a working copy of such cases to Defendant.** ............... 20

         *a.  Harmless standard favors granting Plaintiffs a continuance to supplement disclosures rather than wholly excluding vital expert testimony.* ........................ 21

**III.  CONCLUSION & PRAYER** ...................................................................................... **24**

## <u>TABLE OF AUTHORITIES</u>

CASES

*Alfred v. Caterpillar, Inc.*, 262 F.3d 1083 (10th Cir. 2001)........................................................... 13

*Alnahhas v. Robert Bosch Tool Corp.*,
    No. CIV-13-178, 2018 WL 2293965 (W.D. Okla. May 18, 2018) ........................................... 6

*Arnold v. City of San Antonio*,
    No. SA–07–CA–877, 2009 WL 780671 (W.D. Tex. Mar. 24, 2009)....................................... 23

*Bitler v. A.O. Smith Corp.*, 400 F.3d 1227 (10th Cir. 2005).................................................... 6, 7, 8

*Blocker v. ConocoPhillips Co.*,
    No. CIV-17-248, 2019 WL 9698525 (W.D. Okla. May 14, 2019) ........................................... 7

*Bonner v. ISP Tech., Inc.*, 259 F.3d 924 (8th Cir. 2001) ............................................................... 15

*Cohlmia v. Ardent Health Servs., LLC*, 254 F.R.D. 426 (N.D. Okla. 2008) ............................... 19

*Dean v. Thermwood Corp.*,
    No. 10-cv-433-CVE-PJC, 2012 WL 90442 (N.D. Okla. Jan. 11, 2012) ................................. 15

*Dodge v. Cotter Corp.*, 328 F.3d 1212 (10th Cir. 2003)............................................................... 6, 7

*Ellsworth v. Tuttle*, 148 F. App'x 653 (10th Cir. 2005)........................................................... 22, 25

*Emmanuel Baptist Church v. State Farm Fire & Cas. Co.*,
    No. CIV-11-594, 2012 WL 6084497 (W.D. Okla. Dec. 6, 2012) ........................................... 16

*Fresquez v. Baldwin*, 08-CV-01233, 2010 WL 5934891 (D. Colo. Dec. 15, 2010).................... 22

*HamKim Inc. v. AmGuard Insurance Company*,
    No. 1:20-cv-01194, Dkt. No 105 (D. Colo. Apr. 28, 2023)..................................................... 17

*Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir. 2002) .................................................... 19

*Kizzia v. Electrolux N. Am., Inc.*,
    No. 10-CIV-248-RAW, 2012 WL 540563 (E.D. Okla. Feb. 17, 2012) ................................. 21

*Lexington Ins. Co. v. Newbern Fabricating, Inc.*,
    No. 14-CV-0610, 2017 WL 999461 (N.D. Okla. Mar. 14, 2017) ........................................... 21

*Miller v. C. R. Bard, Inc.*,
    No. CIV-19-1200, 2021 WL 6106417 (W.D. Okla. Mar. 23, 2021) ......................................... 7

*Mountain Food, LLC v. Sentry Insurance*,
    No. 120-CV-03083, 2023 WL 2352822 (D. Colo. Mar. 3, 2023) ...................................... 9, 16

*Nicastle v. Adams Cnty. Sheriff's Office*,
  No. 10-CV-00816, 2011 WL 1674954 (D. Colo. May 3, 2011) ....................................... 22, 25

*Pendant Properties LLC v. EMC Prop. & Cas. Co.*,
  No. CIV-22-245, 2023 WL 4445562 (E.D. Okla. June 16, 2023)............................................ 18

*Perez v. El Tequila, LLC*,
  No. 12-CV-588, 2015 WL 11144032 (N.D. Okla. Feb. 13, 2015) .................................... 19, 20

*Revocable Tr. Agreement of Randall S. Ellis & Teri L. Ellis v. State Farm Fire & Cas. Co.*,
  614 F. Supp. 3d 963 (N.D. Okla. 2022)...................................................................................... 16

*Summers v. Missouri Pacific Railroad System*, 132 F.3d 599 (10th Cir. 1997) ......................... 22

*Tassin v. Sears, Roebuck and Co.*, 946 F. Supp. 1241 (M.D. La. 1996) ....................................... 9

*Taylor v. Cooper Tire & Rubber Co.*, 130 F.3d 1395 (10th Cir. 1997)......................................... 6

*Thompson v. APS of Oklahoma*, LLC,
  No. CIV-16-1257, 2018 WL 4608505 (W.D. Okla. Sept. 25, 2018)................................... 8, 15

*United States v. Archuleta*, 737 F.3d 1287 (10th Cir. 2013) ...................................................... 14

*United States v. Foust*, 989 F.3d 842 (10th Cir. 2021) ................................................................. 7

*Vanderlaan v. Ameriprise Auto & Home Ins.*,
  No. 20-CV-00191, 2021 WL 4441518 (D. Colo. Sept. 28, 2021)........................................... 24

*Wilson v. State Farm Fire & Cas. Co.*,
  No. 21-CV-0062, 2022 WL 1555816 (N.D. Okla. May 17, 2022)...................................... 9, 14

*Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985 (10th Cir. 1999).. 21, 22

## RULES

FED. R. CIV. P. 37(c)..................................................................................................................... 21

FED. R. EVID. 401 ........................................................................................................................... 6

FED. R. EVID. 702......................................................................................................................... 6, 7

# I.

## SUMMARY

The methodology used by Kaemmerling's has been approved by federal courts many times. In fact, Defendant's causation expert also uses his experience, an inspection of the Property, and review of weather data to form an opinion as to the cause of damage.

Second, Kaemmerling's report does not violate Rule 26(a)(2)(B) because the report provides a detailed accounting for the facts and reasons that are the basis of his opinions. Specifically, his report details:

(1) his observations based on his personal on-site inspection of the Property;

(2) the list of materials he reviewed and how he used them to analyze the damage;

(3) his review and discussion of weather data from 2016 to when he inspected in June 2022;

(4) what the proper repair method is based on the extent of damages; and finally

(5) the reasonable and necessary cost to repair the damage caused by the April 22, 2020 storm.

*See generally* Exhibit 2 at 2–17 (Dallas Kaemmerling's expert report).

Finally, Rule 26(a) violations do not automatically require the draconian measure of wholesale exclusion. The fact is, any Rule 26(a) violation has since been remedied and under the Harmless standard all factors overwhelmingly disfavor excluding Kaemmerling.

# II.

## ARGUMENTS AND AUTHORITY

**A.    Dallas Kaemmerling's methodology is reliable because it is based on his experience, on-site observations, industry standards and a review of reliable weather data.**

Defendant's motion to exclude Kaemmerling should be denied, because Kaemmerling's opinions are both relevant and reliable as they are based on his (1) identification of damage through his personal inspection of the property, (2) experience and specialized knowledge in

determining the cause of property damage[1], and (3) review of weather data and other relevant information to help exclude other possible causes of the damage.

A trial court's primary role as gatekeeper is to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2005) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)) (quotations omitted). An expert's testimony must be both (1) relevant, and (2) reliable. *See id.*

Courts have broad discretion in determining the admissibility of expert testimony. *See Taylor v. Cooper Tire & Rubber Co.*, 130 F.3d 1395, 1397 (10th Cir. 1997). This discretion extends to the manner in which a court "assess[es] an expert's reliability, including what procedures to utilize in making that assessment," *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003). However, when performing a *Daubert* analysis courts are reminded that "rejection of expert testimony is the exception rather than the rule." *Alnahhas v. Robert Bosch Tool Corp.*, No. CIV-13-178, 2018 WL 2293965, at *5 (W.D. Okla. May 18, 2018); Fed. R. Evid. 702, advisory committee's notes to 2000 Amendment.

To be relevant, expert testimony must be helpful and is helpful when it has a "tendency to make a fact more or less probable than it would be without the evidence" and it is a fact "of consequence in determining the action." Fed. R. Evid. 401 (a, b); *see also United States v. Archuleta*, 737 F.3d 1287, 1297 (10th Cir. 2013). Therefore, relevance is met "where expert testimony advances the trier of fact's understanding to any degree." *Archuleta*, 737 F.3d at 1297.

In determining reliability, a court's primary focus is the reasonableness of the expert's approach regarding the matter to which his testimony is relevant and not on the conclusions

---

[1] Mr. Kaemmerling was an independent adjuster and worked for insurance companies for six years who relied on his opinions of whether property was damaged from storm events. *See* Exhibit 2 at 3, 18 (explaining his work experience as an independent adjuster for insurance carriers).

generated by the expert's methodology. *Daubert*, 509 U.S. at 595; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 153–154 (1999). Therefore, a party is not required to show that the expert testimony is indisputably correct. *Bitler*, 400 F.3d at 1233; *see also Dodge*, 328 F.3d at 1222 (stating "absolute certainty" is not a requirement for admissible expert testimony).

Additionally, where an expert's opinion is on a subject that "is not a traditional science, and *Daubert* factors do not [] correspond perfectly" the expert's testimony may still be admissible so long as the methodology used in reaching an opinion is based on "sufficient data, sound methods, and the facts of the case." *See United States v. Foust*, 989 F.3d 842, 847 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 294 (2021); Fed. R. Evid. 702(b)–(d). For example, for non-scientific topics, "it is well settled that an expert may base his or her opinion testimony on personal knowledge and experience." *Miller v. C. R. Bard, Inc.*, No. CIV-19-1200, 2021 WL 6106417, at *3 (W.D. Okla. Mar. 23, 2021) (citing *Kumho Tire Co.*, 526 U.S. at 150-52); *see also Blocker v. ConocoPhillips Co.*, No. CIV-17-248, 2019 WL 9698525, at *2 (W.D. Okla. May 14, 2019) ("[W]here the proposed testimony does not 'rest upon scientific foundations,' the court may determine that 'the relevant reliability concerns should focus upon personal knowledge or experience.'") (quoting *Kumho Tire Co.*, 526 U.S. at 149, 150, 152). Based on Kaemmerling's methodology used by everyone in the industry, his experience, his personal inspection, and review of weather data, Defendant's motion should be denied.

## 1. Mr. Kaemmerling's methodology has been approved by federal courts and is used by Defendant's own causation expert.

As explained in detail below, Kaemmerling's methodology is (1) identifying damage and the characteristics of the damage through a personal inspection, (2) using his experience and specialized knowledge to determine the cause of damage, and (3) reviewing weather data and

other relevant information to exclude other possible causes of the damage.[2] This method allowed Kaemmerling to make a reliable conclusion based upon facts, data, and his experience, that an April 22, 2020 hail and wind storm caused damage to the McKenzies' home and the proper method in which to fix the damage. *See* Exhibit 2 at 16–17.

Even Defendant's own causation expert uses the same methodology that Kaemmerling uses to form his opinions. For example, Defendant's expert Corbin Swain's ("Swain") report starts by explaining that an inspection of the Property was performed on November 10, 2020. Exhibit 4 at 3. Swain then lists the documents he reviewed that are pertinent to his conclusions including weather data. *Id.* at 4–5, 37–44. His report, like Kaemmerling's report, includes discussions of weather data and whether a severe storm occurred during the relevant time, the damage observed during the on-site inspection, and the characteristics of the damage along with his conclusion of the cause of damage based on the characteristics. *Id.* at 5–8.

Swain and Kaemmerling use the exact same methodology but simply reach different conclusions. *See id.* at 7 (concluding the roof system was not damaged by hail impact); Exhibit 2 at 16 (concluding hail damage necessities replacement). Here, Defendant's true complaint is that Kaemmerling's conclusions are different than its expert's conclusions which itself is not proof of an unreliable methodology. *See Bitler*, 400 F.3d at 1233 ("[A] trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions.").

---

[2] Kaemmerling does not name this methodology, but it would fall into what the Tenth Circuit refers to as "reasoning to the best inference." *See Thompson v. APS of Oklahoma*, LLC, No. CIV-16-1257, 2018 WL 4608505, at *5 (W.D. Okla. Sept. 25, 2018). Under this method, an expert forms an opinion by "draw[ing] 'abductive inferences about a particular proposition or event by a process of eliminating all other possible conclusions to arrive at the most likely one, the one that best explains the available data.'" *Id.* (quoting *Bitler*, 400 F.3d at 1237, 1237 n. 5.). In eliminating alternative causes experts must provide objectionable reasons, however, "an expert need not 'categorically exclude each and every possible alternative cause' to make such testimony admissible." *See id.* (quoting *Bitler*, 400 F.3d at 1238 n. 6).

Courts across the Country have upheld Mr. Kaemmerling's practices in this case as a proper method for determining the cause and cost of storm damage to property. *See, e.g.*, *Wilson v. State Farm Fire & Cas. Co.*, No. 21-CV-0062, 2022 WL 1555816, at *7 (N.D. Okla. May 17, 2022) (noting personal experience, inspection of property, and review of weather reports are facts that support the reliability of expert testimony); *Mountain Food, LLC v. Sentry Insurance*, No. 120-CV-03083, 2023 WL 2352822, at *2 (D. Colo. Mar. 3, 2023) (holding experience in evaluating building damage, investigation of the Property, and review of weather made expert's opinions reliable and admissible under 702); *see also Tassin v. Sears, Roebuck and Co.*, 946 F. Supp. 1241, 1248 (M.D. La. 1996) ("If the expert's opinions are based on facts, a reasonable investigation, and traditional technical/mechanical expertise, and he provides a reasonable link between the information and procedures he uses and conclusions he reaches, then rigid compliance with Daubert is not necessary."); *J.A. Lanier & Associates, Inc. v. Robbins Electra Mgmt., LLC*, No. 4:21-CV-390, 2022 WL 1226966, at *4 (E.D. Tex. Apr. 26, 2022) ("A witness' experience, studies and education, combined with a review of the relevant materials can provide a reliable basis for expert testimony.").

### a. Kaemmerling's physical inspection provided the necessary facts that with his experience enable him to determine the damage is predominantly from hail.

Kaemmerling's report details the observations he made from his physical inspection of the Property and explains how he determined hail damaged the Property. *See* Exhibit 2 at 2–4; *see also id.* at 11–13, 41–166 (photographing examples of hail damage).

Kaemmerling specifically discusses the characteristics of damage, such as circular indentions and crushed granules found to the Property, and explains these characteristics are what one would expect to find from hail damage. *See id.* at 11. Kaemmerling's report then goes on to explain how he used additional characteristics, such as the color of the hail damage, to rule out

older storms. *See id.* at 5–6 ("If the damage on the roof was from 2017, we would expect to see severe weathering beginning to be visible in the form of silver coloring of the bitumen of the shingles."). Kaemmerling attached hundreds of exemplary photographs of the Property to show examples of recent hail damage across the roof. *See id.* at 11–12, 41–166.

Kaemmerling's report further explains how he was able to rule out other potential causes of the damage such as mechanical damage based on the linear characteristics of foot traffic as opposed to the circular damage caused by hail. *See id.* at 11–12 ("[M]inor mechanical damages . . . are clear and distinct from hail damage."). Kaemmerling also notes the damage was primarily found in the valleys as opposed to across the roof which explains his conversation with the homeowner regarding prior roof repairs completed following lightning damage. *See id.* at 4, 11.

Finally, Kaemmerling's physical inspection allowed him to make general observations of the Property in order "to get a general understanding of the damage." *Id.* at 5. As a result, Kaemmerling was able to determine that the "roof exhibited a normal amount of wear and tear that is expected and reasonable for its age" further validating his opinion that hail was the predominate cause of damage to the Property. *See id.* at 11, 16 ("As a result of the hail and wind damage, full roof replacement is necessary.").

### b. *Historical information such as weather data supports Kaemmerling's opinion that the April 22, 2020, hail storm was the cause of damage.*

Defendant's most absurd attack on Kaemmerling's methodology is that he failed to exclude other storms, especially storms between April 22, 2020, and when he inspected in June of 2022. *See* Dkt. No. 57 at 6. Defendant's accusation is **patently false**, and shows Defendant failed to fully read Kaemmerling's report. Kaemmerling utilized weather data from the National Oceanic and

Atmospheric Administration ("NOAA")[3], radar images, and other historical information to rule out storms and determine which storm was the cause of damage. *See id.* at 4–10. More specifically, the weather section of Kaemmerling's report clearly states he was able to rule out other storms based on the NOAA weather data for Carter County, Oklahoma where he searched for "High Wind, Thunderstorm Wind, and Hail [events] ***for the time period of January 1, 2016 through June 2022.***" Exhibit 2 at 5 (emphasis added).

For example, page 9 of Kaemmerling's report discusses a storm that struck southern Ardmore **on August 16, 2020** (which clearly falls between April 22, 2020 and June 2022). *Id.* at 10. Kaemmerling used NOAA weather data and radar images of the August 16, 2020 storm and concluded that the storm passed too far South to hit the Property based on the position of the storm via publicly available radar imagery. *Id.* Therefore, Kaemmerling obviously did research weather events from April 22, 2020 through June 2022 and properly disclosed his findings and conclusions. *See id.* at 5–11, 26–38 (discussing and analyzing weather data).

Defendant also wrongfully accuses Kaemmerling of "limit[ing] such a review [of weather data] to only four years before the alleged date of loss," or "*how and why*, damage from 2016 or 2017 would be evidence by severe weathering." *See* Dkt. No. 57 at 6, 7. Again, Kaemmerling's report clearly does address this issue because Kaemmerling specifically explains that "[i]f the damage on the roof was from 2017 [or older], we would expect to see severe weathering beginning to be visible in the form of silver coloring of the bitumen of the shingles." *See* Exhibit 2 at 5–6. He then attaches an exemplary photograph of hail damage to the roof which clearly shows the

---

[3] NOAA, a federal agency that is a source of historical weather and climate data, provides weather data that is publicly available and based on eyewitness events and reports. *See Storm Data FAQ Page,* NOAA, https://www.ncdc. noaa.gov/stormevents/faq.jsp. It is also used industry wide by experts, adjusters, including Defendant's own expert Swain. *See* Exhibit 4 at 5, 37–41 ("The published data available on [NOAA's] website originates from data collected at National Weather Service (NWS) recording sites and trained spotter reports.")

exposed bitumen of the shingles is black and not silver supporting Kaemmerling's analysis and conclusion, and therefore his ability to exclude storms older than 2017. *Id.* at 11.

> ### c.   *Kaemmerling explains in detail how his experience enables him to determine the cause of damage was a recent hailstorm.*

Kaemmerling's report also clearly explains how his experience as a public adjuster, independent adjuster, and general contractor enable him to form an opinion as to the cause of Property damages and the costs to repair the damages. *Id.* at 3. Kaemmerling's on-the-job experience adjusting thousands of similar residential claims for hail and wind damage has provided sufficient experience in "identifying hail hits, granular loss and wind damage." *Id.* Insurance companies relied upon his opinions for thousands of claims. *Id.* (noting work as an independent adjuster for insurance carriers since 2016). In addition to gaining specialized knowledge from his on-the-job work, Kaemmerling has also "successfully pass[ed] a complicated state-licensing exam" to become a licensed public adjuster, and "complete[s] at least twenty-four hours of continuing education every two years" to remain in good standing. *Id.*

Further, as an independent adjuster, Kaemmerling "received formal training on identification of storm damage to building envelopes [by] attend[ing] trainings through engineer firms and industry trade shows in the identification of hail damage." *Id.* For example, as part of his formal education Kaemmerling has been HAAG certified for residential inspections and wind inspections. *See id.* at 3, 18; *see also About Haag Certified Inspector Program*, HAAG EDU., https://haageducation.com/s/about-HCI (detailing benefits of HAAG certification, including "learn[ing] how hail and wind interact with roofing . . . assessing an entire building following a wind event, . . . [and] differentiat[ing] wind damage from . . . natural and mechanical [damage].").

Additionally, Kaemmerling's work as a general contractor for the past 10 years has given him experience in "estimate[ing], manag[ing], and perform[ing] repairs to many properties with

storm damage, including hail damage." Exhibit 2 at 3. This means Kaemmerling has extensive knowledge as to the proper method of repairs, the necessary materials and tools for repairs, and how to reasonably estimate the cost to complete repairs. *See id.*

Kaemmerling clearly explains how his experience and specialized knowledge qualify him to opine on the issues of causation and cost for this case. *See Alfred v. Caterpillar, Inc.*, 262 F.3d 1083, 1087 (10th Cir. 2001) (determining a non-engineer was partially qualified based on his 9 years of experience and additional self-performed research).

> **d. *Kaemmerling's estimate only includes items that must be repaired or replaced as a result of the April 22, 2020 hail storm.***

Finally, Defendant's attack of Kaemmerling's methodology regarding his use of Xactimate is again incorrect.[4] Defendant contends Kaemmerling fails to explain how he determined "which items to include in [the] estimate to determine costs." Dkt. No. 57 at 7. However, Kaemmerling clearly states in his report that the estimate is a "line-item detailed estimate" that consists of items at the property he considered to be damaged as a result of the April 22, 2020 hail and wind storm. *See* Exhibit 2 at 13; Exhibit 1 at 1 (explaining the estimate attached to his report was created using industry standard software and includes items damaged from the April 22, 2020 storm and the material and labor required to complete the repairs). The report further explains that Kaemmerling's estimate calls for replacing the roof based on his opinion that the roof suffered extensive hail damage and that the damage was not confined to a small area of the roof. *See* Exhibit 2 at 12–13.

Defendant's complaint is actually a prime example of an argument that is a factual disagreement with Kaemmerling's conclusion to include items damaged by the April 22, 2020

---

[4] Xactimate software system is used by almost every insurance carrier in the industry including the Defendant. *See* Exhibit 5 at 2 (recording Defendant's use of Xactimate to estimate damages to the Property).

hail and wind storm and not his actual methodology for determining what to include in the estimate. *Compare* <u>Exhibit 2</u> at 16 (determining that the replacement cost value of damaged property from the April 22, 2020 hail and wind storm is $57,336.74), and <u>Exhibit 4</u> at 7–8 (Defendant's expert concluding the roof was not damaged by hail but only mechanical damage and deterioration).

Kaemmerling's methodology is sound and reliable because he uses his specialized knowledge, skill and training in the industry for years, and a thorough review of weather data to exclude all other storms as the cause of hail damage besides the April 22, 2020 storm. He was also able to determine that the extensive hail damage to the roof was the predominate reason the roof must be replaced and not mechanical damage or wear and tear. Kaemmerling's analysis does not suffer from any fatal analytical gaps but instead presents reliable expert testimony as to the cause and cost of damage to the McKenzies' Property. *See Wilson*, No. 21-CV-0062, 2022 WL 1555816, at *7 (noting too large of analytical gaps, such as incomplete weather analysis, would be a proper basis for exclusion). Therefore, Kaemmerling's opinions as to the cause of damage at the property and the reasonable and necessary costs to repair the damage are admissible because they are relevant and reliable.[5] Therefore, Plaintiffs request Defendant's motion be denied.

### 2. Alleged factual deficiencies go to the weight of an expert's opinion not admissibility, and is better suited for cross-examination.

Defendant lists numerous issues it has with Kaemmerling's opinions and tries to frame

---

[5] Kaemmerling's opinions are relevant as they will assist the trier of fact in determining what damages exist at the Property and the cause of those damages, i.e., whether the damages are covered under the Policy. *See* <u>Exhibit 2</u> at 12 (concluding the Property "more likely than not, sustained wind and hail damage as a result of the April 22nd, 2020 storm event" and that "because of the widespread hail damage to the roof and other items . . . and that spot repair is not appropriate."). Kaemmerling's opinions will also establish whether Defendant paid the McKenzies for all of the covered damage under the Policy, i.e., whether Defendant complied with the Policy and paid the McKenzies all benefits due under the Policy. *See* <u>Exhibit 2</u> at 16, 24–25 (determining the total amount owed for the April 22, 2020 storm is $57,336.74 based on Kaemmerling's July 6, 2022 damages estimate). *See United States v. Archuleta*, 737 F.3d 1287, 1297 (10th Cir. 2013) (relevance is met "where expert testimony advances the trier of fact's understanding to any degree.").

them as issues with his methodology. However, the majority of Defendant's Motion to Exclude is actually an attack on the factual basis of Kaemmerling's opinions. *See generally* Dkt. No. 57 at 7. Specifically, Defendant complains of his use of characteristics of damage, his alleged failure to review storm data from April 22, 2020 to June 2022, or weather data prior to 2016, and how his experience assisted him in determining the cause of damage. *See id.*

Notwithstanding the fact that Defendant is factually incorrect, *see supra* **Section II.A.1.**, Defendant also fails to understand that as a general rule "attacks on [an expert's] conclusions or their foundations, . . . belong in cross-examination" and are not for a court's determination. *See Thompson v. APS of Oklahoma*, LLC, No. CIV-16-1257, 2018 WL 4608505, at *5 (W.D. Okla. Sept. 25, 2018) ("[T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.") (citing *Bonner v. ISP Tech., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001)).

For example, Defendant argues Kaemmerling did not properly exclude storms before the year 2016 based on a lack of weather data, and that he failed to review weather data between April 22, 2020, and his inspection in June of 2022.  Dkt. No. 57 at 7. This is a factual attack because it does not argue against his use of weather data to exclude possible storms, but an argument that the periods of time he researched is inadequate. *See Dean v. Thermwood Corp.*, No. 10-cv-433-CVE-PJC, 2012 WL 90442, at *7 (N.D. Okla. Jan. 11, 2012) (explaining "[m]ethodology is the process by which the expert relates his experience to the facts at hand in order to reach an expert opinion"; not if an expert used every conceivable fact available). Therefore, if Defendant feels Kaemmerling failed to consider sufficient weather data, or did not adequately analyze other *factual issues* of the case, then the proper method to challenge Kaemmerling's testimony is through cross-examination at trial. *See Emmanuel Baptist Church v.*

*State Farm Fire & Cas. Co.*, No. CIV-11-594, 2012 WL 6084497, at *5 (W.D. Okla. Dec. 6, 2012) ("[W]here an expert applies a sound methodology but commits errors or relies on incomplete information in reaching his conclusions, '[s]uch deficiencies impact the weight of the expert's testimony rather than its admissibility.'") (quoting *Smith v. BNSF Ry. Co.*, 2011 WL 7053631, at *7 (W.D. Okla. Sept. 14, 2011)).

"[Defendant's] challenges to [Kaemmerling's] methodology are actually just disagreements with [Kaemmerling's] opinions that can be explored on cross-examination" and therefore its Motion should be denied. *See Hubbell v. State Farm Fire & Cas. Co.*, No. 21-CV-0341, 2022 WL 3050020, at *4 (N.D. Okla. Aug. 2, 2022).

### 3.   Mr. Kaemmerling does not offer expert opinions on weather patterns but merely relies on government weather data to help determine the cause of damage.

Kaemmerling does not have to be a meteorologist to review and rely on weather reports. *Revocable Tr. Agreement of Randall S. Ellis & Teri L. Ellis v. State Farm Fire & Cas. Co.*, 614 F. Supp. 3d 963, 988 (N.D. Okla. 2022). Courts across the Country admit expert testimony that relies on weather data from non-meteorologist because, as a federal court in the Northern District of Oklahoma aptly stated, "expert testimony from a meteorologist is not necessary to establish that a severe storm affected [insureds'] property." *Revocable Tr. Agreement*, 614 F. Supp. 3d at 988; *Mountain Food, LLC v. Sentry Ins.*, No. 120-CV-03083, 2023 WL 2352822, at *2 (D. Colo. Mar. 3, 2023) (determining it is within the scope of an expert's expertise, "when determining damage causation (including hail and wind damage), to rely on weather reports confirming the presence of a severe storm at the residence."); *see also J.A. Lanier*, No. 4:21-CV-390, 2022 WL 1226966, at *3 (admitting testimony that relied on NOAA data).

Here, Kaemmerling relies on weather data, such as NOAA storm reports that are based on eye-witness spotters and radar images to note the location and reported severity of storms. *See*

Exhibit 2 at 5–11 (ruling out storms based on their location, lack of severity with the damage not matching the characteristics of damage found at the property). In a nearly identical case to this, a federal court in Colorado concluded plaintiff's causation expert was allowed to use similar weather data because the expert "does not offer general meteorological opinions, but instead, he relies on specific weather data to formulate an opinion regarding the cause of the damage to Plaintiff's property." *See HamKim Inc. v. AmGuard Insurance Company*, No. 1:20-cv-01194, Dkt. No 105 at 12 (D. Colo. Apr. 28, 2023).

Like in *HamKim*, Kaemmerling is not offering opinions on weather patterns but on building damage, "an exercise which requires use of publicly available meteorological data" *See id.* For example, Kaemmerling does not use weather data to determine if weather conditions for a specific day were sufficient to trigger hail, but instead to confirm if a storm did or did not occur. *See* Exhibit 2 at 7 (citing NOAA report of a hail event on April 22, 2020 in Ardmore, Oklahoma, where 1.75-inch hail fall was reported by an "Emergency Manager"). Kaemmerling then uses the same weather report to verify if the characteristics of damage at the Property correspond with the characteristics of a specific storm report. *See id.* at 6 (excluding a June 23, 2017 hail storm based on the characteristics of recent hail damage as represented by "clear spatter marks from hail impacts as well as fresh dark damage to the shingles" instead of silvering of damage).

Defendant's own expert uses NOAA weather reports for the same purpose as is standard practice in first-party insurance disputes pertaining to property damage. *See* Exhibit 4 at 5, 37–41 (listing the NOAA weather databases Swain reviewed); *see also Pendant Properties LLC v. EMC Prop. & Cas. Co.*, No. CIV-22-245, 2023 WL 4445562, at *2 (E.D. Okla. June 16, 2023) (noting expert's use of the NOAA Storm Events Database as part of his analysis regarding the cause of building damage).

Finally, Kaemmerling did not solely rely on NOAA data to verify that a large hail storm hit the Property on April 22, 2020. As part of Kaemmerling's analysis he also reviewed additional weather data pulled by Defendant's expert, including a Hail Verification Report from CoreLogic. *See* Exhibit 2 at 5 (listing "D[EC] Engineering Report" as part of materials reviewed). That Hail Verification Report also confirmed the presence of at least 1.2-inch hail fall at the Property on April 22, 2020. *See* Exhibit 4 at 42.

While Defendant may disagree with the factual basis of Kaemmerling's weather analysis the proper basis to challenge them is through cross-examination at trial as Kaemmerling is permitted to rely on weather data as part of his method.  *See Revocable Tr. Agreement*, 614 F. Supp. 3d at 988–89.

## B. As of the date of this filing, Mr. Kaemmerling has disclosed all information required under Rule 26(a)(2)(B).

Defendant alleges two grounds for a violation of Rule 26(a). First, Defendant claims Kaemmerling "does not provide a detailed and complete report as his report does not [state] the basis and reasoning of his conclusions." *See* Dkt. No. 57 at 8. Second, that Kaemmerling did not provide a list of previous expert testimony from the last four years. *Id.*

As shown below Defendant's first complaint is simply not supported by the facts because Kaemmerling specifically discusses the (1) basis of his opinions, (2) the facts relied upon and his application of his experience to the facts of the case, and (3) how the damages correspond to the scope of repairs in his estimate. *See generally* Exhibit 2 at 2–17. Finally, the lone Rule 26(a) violation was harmless and has since been remedied. As a result, we respectfully request that Defendant's motion be denied.

### 1. Dallas Kaemmerling disclosed the basis for his opinions are his experience, a physical site inspection, the characteristics of the damages, and weather data.

As discussed in detail above, *supra* **Section A.1.a–d.,** Kaemmerling provided a detailed explanation as to his opinions and the facts and rationale relied upon in reaching those opinions and thus complied with the disclosure requirements under Rule 26(a)(2)(B)(ii). *See Perez v. El Tequila, LLC*, No. 12-CV-588, 2015 WL 11144032, at *3 (N.D. Okla. Feb. 13, 2015) (denying request to exclude testimony under Rule 26(a)(2)(B)(ii) because "the very information defendants claim is absent appears on the first page of the Report.").

First, in order to understand the specificity required under Rule 26(a)(2)(B) it is important to note that the purpose of a Rule 26(a) expert report is simply "'to set forth the substance of the direct examination' . . . [and] allow the opposing party 'a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'" *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002) (quoting Fed. R. Civ. P. 26(a)(2) advisory committee's note to 1993 amendment). Rule 26(a)(2) does not require a written expert report to "replicate every word that the expert might say from the stand." *Perez*, No. 12-CV-588, 2015 WL 11144032, at *3 (citing *Cohlmia v. Ardent Health Servs., LLC*, 254 F.R.D. 426, 430 (N.D. Okla. 2008)).

Here, Kaemmerling has provided a detailed fifteen-page written expert report and does not provide Defendant with ***only*** "conclusory opinions". *See generally* Exhibit 2 at 2–16. Kaemmerling's expert report explains in detail his qualifications, (*id.* at 3), describes documents and software he relied upon in addition to other historical information (*id.* at 4), provides a six-page discussion of how he reached his conclusion that the April 22, 2020 storm caused damage to the exclusion of other storms based on weather data (*id.* at 4–10), specifies why the characteristics of damage to the Property was predominately consistent with hail damage (*id.* at 11–12), includes statements regarding the proper scope of repair based on the extent of hail damage (*id.* at 12–13),

and describes his conclusion as to what the replacement cost value and actual cash value of damages is with an additional three-page discussion of how he used standard insurance industry software known as Xactimate to estimate the value of damages (*id.* at 13–15).

Moreover, Kaemmerling attached to his report his curriculum vitae that details his work experience (*id.* at 18), his line-item estimate of damages to the Property (*id.* at 20–24), the weather reports and radar images he references (*id.* at 26–38), and hundreds of photographs of damage to the Property from his inspection (*id.* at 40–166).

Kaemmerling's report satisfies the purpose behind Rule 26(a)(2) because it contains Kaemmerling's rationale and all facts relied upon regarding his opinions on both the cause of damage to the Property and the cost to repair the damage and therefore "allow[s] the opposing party a reasonable opportunity to prepare for effective cross examination." *See Jacobsen*, 287 F.3d at 953 (10th Cir. 2002) (inner quotations omitted). Moreover, the information Defendant alleges is missing from Kaemmerling's report can in fact be found throughout his report or attached as an exhibit to his report. For these reasons Defendant's Motion to Exclude on this basis should be denied. *See Perez*, No. 12-CV-588, 2015 WL 11144032, at *3 ("[T]he very information defendant[] claim[s] is absent appears [in] . . . the Report."); *see also Kizzia v. Electrolux N. Am., Inc.*, No. 10-CIV-248-RAW, 2012 WL 540563, at *1 (E.D. Okla. Feb. 17, 2012).

**2. Kaemmerling does not keep a list of his previous expert testimony from the past four years but has produced a working copy of such cases to Defendant.**

Plaintiffs admit they did not initially produce a list of all cases Kaemmerling has testified in as an expert over the past four years.  This is because Kaemmerling himself does not keep a list of such cases. Exhibit 2 at 4. However, in an effort to comply with Rule 26(a) of the Federal Rules of Civil Procedure, Plaintiffs' counsel has worked with Kaemmerling to make a working list of cases Kaemmerling has testified in as an expert over the last four years and will continue to update

the list if more cases are discovered. *See* Exhibit 3 at 2. As discussed below, the delay in producing this one-page document is not sufficient to exclude Plaintiffs' expert and in turn, ending Plaintiffs' valid case against Defendant. *See Lexington Ins. Co. v. Newbern Fabricating, Inc.*, No. 14-CV-0610, 2017 WL 999461, at *5 (N.D. Okla. Mar. 14, 2017) ("Excluding a witness from trial on the basis of a quickly remedied mistake is too extreme."). It was in fact harmless to Defendant and has since been remedied through Plaintiffs' supplemental production. As a result, Plaintiffs respectfully request that Defendant's motion be denied.

### a. Harmless standard favors granting Plaintiffs a continuance to supplement disclosures rather than wholly excluding vital expert testimony.

Defendant's assertion that Kaemmerling failed to comply with Rule 26(a) and thus *must* be stricken is incorrect. Rather, if a Rule 26(a) violation occurs a court should examine the violation under the "substantial justification" or "harmless" standard. *See* Fed. R. Civ. P. 37(c)(1). Courts have discretion to impose appropriate sanctions based on the violation and analyzing the violation under the Harmless Standard. *See id.*; *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

To determine whether such a violation is "harmless," courts in the 10th Circuit generally weigh the four *Woodworker's* factors which are: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc.*, 170 F.3d at 993.

After weighing the factors courts in the 10th Circuit then determine whether sanctions are necessary, and if so, what sanction is appropriate. *See Nicastle v. Adams Cnty. Sheriff's Office*, 10-CV-00816, 2011 WL 1674954, at *2 (D. Colo. May 3, 2011) (requiring supplemental disclosures

from violating party at trial if violating party sought to present non-retained expert testimony under FRE 702).

When reviewing any Rule 26(a) violations courts should keep in mind that exclusion is the exception to the rule and not the default. *See Fresquez v. Baldwin*, 08-CV-01233, 2010 WL 5934891, at *16 (D. Colo. Dec. 15, 2010) (citing *Summers v. Missouri Pacific Railroad System*, 132 F.3d 599, 604 (10th Cir. 1997)). Further, the Tenth Circuit has stated "[w]here a party seeks to have evidence excluded on the basis of alleged discovery misconduct, 'the challenged behavior must ***substantially*** have interfered with the aggrieved party's ability fully and fairly to prepare for and proceed at trial.'" *Ellsworth v. Tuttle*, 148 F. App'x 653, 663 (10th Cir. 2005) (unpublished) (quoting *Woodworker's Supply*, 170 F.3d at 993) (emphasis in original).

The first factor— prejudice or surprise —weighs completely in Plaintiffs favor because Kaemmerling disclosed the bulk of information required under Rule 26(a)(2)(B) and therefore any prejudice or surprise is at most *de minimis* weighing in favor of a harmless finding. Additionally, Defendant has not taken Kaemmerling's deposition and if necessary, Plaintiffs offers Kaemmerling for deposition to remedy any deficiency.

Kaemmerling complied with Rule 26(a) by disclosing (1) his compensation, (2) the basis for his opinions, (3) the underlying facts and data in forming such opinions, and (4) Kaemmerling's application of his methodology. *See generally* <u>Exhibit 2</u> at 2–166 (describing photographs of damage to the Property, the scope of covered damage, the characteristics of the damage at the Property, NOAA weather data, and Kaemmerling's extensive experience).

As of today, Plaintiffs produced a working list of cases Kaemmerling's testimony over the past four years as an expert and attaches it to this brief. *See* <u>Exhibit 1</u> at 2. This delay in disclosing a list of previous expert testimony is *de minimis* as the list does little more but restate readily

available information accessible through google searches and legal research engines.[6] Moreover, a prior expert testimony is simple background information, not substantive facts and opinions.

Moreover, this list is being produced months before trial and before Defendant has deposed Kaemmerling. *See* Dkt. No. 63 at 6 (Court's Pretrial Order noting the trial docket setting "is yet to be determined" and that the deposition of Dallas Kaemmerling has not yet occurred). Defendant therefore has time to research Kaemmerling's prior testimony and prepare for cross-examination which is the primary purpose of this disclosure. *See Arnold v. City of San Antonio*, No. SA–07–CA–877, 2009 WL 780671, at *3 (W.D. Tex. Mar. 24, 2009) (quoting *Wallace v. Hounshel*, No. 1:06–cv–01560, 2008 WL 2184907, at *3 (S.D. Ind. May 22, 2008)) ("Having access to other cases . . . allows the opposition to obtain prior testimony of an expert and potentially, to identify inconsistent positions taken in previous cases for use in cross-examination."). Any prejudice Defendant might be said to suffer is *de minimus* at best and has been cured. Therefore, the first factor weighs in favor of a harmless finding.

The second factor— ability to cure the prejudice —also weighs heavily in favor of a harmless finding and against exclusion.  Plaintiffs have already cured any prejudice by supplementing their Rule 26(a)(2)(B) disclosures. Therefore, Defendant in the same position it would have been in had the list been produced alongside his expert report with months to prepare.

The third factor— disruption at trial —supports allowing the testimony of Kaemmerling. Allowing Kaemmerling to testify will cause no disruption at trial. Plaintiffs' Rule 26(a)(2)(B) disclosure provides Defendant with sufficient notice that Kaemmerling's testimony will be on "(1) causation and (2) the cost to make repairs." *See* Dkt. No. 57 at 5. Therefore, Defendant knows

---

[6] By simply searching "Dallas Kaemmerling" in Westlaw with the "All State & Federal" option for search a person can find many of the cases listed on Kaemmerling's working list of previous expert testimony.

exactly what Kaemmerling will testify on at trial and the facts relied upon. Any delay in disclosing previous expert testimony will not disrupt trial. Therefore, this factor favors a harmless finding.

The fourth factor — bad faith or willfulness —also weighs in favor of allowing testimony. Plaintiffs did not act in a dilatory manner but simply were unable to produce the information at the time. *See* Exhibit 2 at 4 (noting that Kaemmerling did not have a list of his previous expert testimony). Moreover, Defendant presents no evidence that Plaintiff willfully failed to disclose additional specific facts or opinions in its 26(a)(2)(C) disclosures. *See Vanderlaan v. Ameriprise Auto & Home Ins.*, 20-CV-00191, 2021 WL 4441518, at *8 (D. Colo. Sept. 28, 2021) (determining bad faith requires more than just a party's failure to satisfy disclosure requirements alone). Therefore, this factor also weighs in favor of a harmless finding.

All *Woodworker's* factors weigh in favor of a harmless finding and Dallas Kaemmerling should not be excluded from the case on a hyper technical challenge for not initially producing a list of prior expert testimony. Moreover, this issue has now been corrected through supplemental production and cannot be said to have substantially interfered with Defendant's ability to prepare for trial. *See Nicastle*, 10-CV-00816, 2011 WL 1674954, at *2 (requiring supplemental disclosures from violating party at trial); *Ellsworth*, 148 F. App'x at 663.

### III.

### CONCLUSION & PRAYER

Defendant's Motion fails for several reasons. First, Kaemmerling used a valid method and relevant facts to form the basis of his opinions and properly disclosed them. Second, despite Defendant's factual arguments being objectively incorrect, cross-examination for use of shaky evidence is the appropriate method against experts and not wholesale exclusion. Finally, the lone Rule 26(a) violation was harmless as Plaintiffs have since produced the one-page document with ample time for Defendant to prepare for trial. WHEREFORE, PREMISES CONSIDERED,

Plaintiffs, Jeri Gill McKenzie and Robert McKenzie request Defendant's Motion to Exclude Dallas Kaemmerling be denied in its entirety and for such further relief to which they may be justly entitled.

Respectfully submitted,

*/s/Preston J. Dugas III*
Preston J. Dugas III
*Admitted Pro Hac Vice*
pdugas@dcclawfirm.com
**DUGAS & CIRCELLI, PLLC**
1701 River Run, Suite 703
Fort Worth, Texas 76107
Telephone:     (817) 945-3061
Facsimile:     (682) 219-0761

Terry M. McKeever
OBA#21751
tmm@fylaw.com
**FOSHEE & YAFFE LAW FIRM**
P.O. Box 890420
Oklahoma City, Oklahoma 73189
Telephone:     (405) 378-3033
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I certify a true and correct copy of the foregoing instrument was served on all parties pursuant to the Federal Rules of Civil Procedure on September 13, 2023 in manner described below:

*via e-service:*
Grant A. Fitz
OBA# 19806
gfitz@richardsconnor.com
**RICHARDS & CONNOR**
525 S. Main Street
12th Floor, Park Centre Building
Tulsa, Oklahoma 74103
Telephone:     (918) 585-2394
Facsimile:     (918) 585-1449
**ATTORNEY FOR DEFENDANT**

*/s/Terry M. McKeever*
Terry M. McKeever