IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

JERI GILL MCKENZIE and ROBERT MCKENZIE,

      Plaintiff,

v.            Case No. 21-258-JWB

HANOVER INSURANCE COMPANY,

      Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion for summary judgment (Doc. 56), the parties' *Daubert* motions (Docs. 57, 60), and the parties' motions in limine (Docs. 58, 59, 61). The motions are fully briefed and ripe for decision. (Docs. 66–74.) Defendant's motion for summary judgment (Doc. 56) is GRANTED IN PART and DENIED IN PART for the reasons stated herein. Defendant's motion to exclude the testimony of Dallas Kaemmerling (Doc. 57) is DENIED. Plaintiffs' motion to exclude Defendant's expert (Doc. 60) is GRANTED.

**I.    Facts**

The facts set forth herein are material to the issues and uncontroverted or viewed in a light most favorable to Plaintiffs Jeri Gill McKenzie and Robert McKenzie. Plaintiffs own a home in Ardmore, Oklahoma. Their home is insured through a policy issued by Defendant Hanover Insurance Company. (Doc. 56-1.) The policy covers the home and structures attached to the dwelling. The policy insures against losses to the property but has several exclusions. The policy does not insure against losses resulting from wear and tear or deterioration. (*Id.* at 12.) The policy also excludes any loss due to faulty, inadequate, or defective materials. (*Id.* at 15.) The policy has a one percent deductible for wind and/or hail claims, which in this case amounts to $5,770.00.

1

On September 8, 2020, Plaintiffs contacted their insurance agent and submitted a claim for loss to their roof caused by wind and hail damage from an event that occurred on April 22, 2020. (Docs. 56-2; 2-1.) The next day, Defendant scheduled Ladder Now to inspect the property. On September 10, Ladder Now photographed the property and submitted a report to Defendant. According to Ladder Now, there was no evidence of wind or hail damage found on the roof. However, there was damage to the roof's metal accessories. (Doc. 56-3 at 3.) The report noted that there was observed granule loss and deterioration on the roof shingles. (*Id.* at 51–52; 55–57.)

Defendant reviewed Ladder Now's report and concluded that the property's roof did not sustain hail damage. Rather, Defendant determined that the photos showed evidence of defective shingles. (Doc. 56-2 at 8.) Further, the damages to the roof's metal accessories were determined to be less than the deductible. On September 14, Defendant informed Plaintiffs of their denial of the claim by letter and attached the Ladder Now report. (Doc. 56-4.) On October 12, Brian McCarty, a roofing contractor who had performed work for Plaintiffs on some of their rental properties, contacted Defendants to dispute their determination. McCarty sent Defendant numerous photos in support of his determination that Plaintiffs' roof sustained hail damage. (Doc. 56-5, 56-6, 56-7.) The photographs were not taken by McCarty who did not go onto the roof to visually inspect it. (*Id.*; *see also* Doc. 56-8 at 8.)

Due to the continued dispute on the claim, Defendant approved a licensed engineer to inspect the property. (Doc. 56-2 at 5.) Day Engineering ("Day") inspected the property on November 10. According to Day, the roof did not have hail damage but had "[v]arying extents of granule loss . . . on the shingles . . . that were consistent with age-related deterioration and wear/weathering of the roofing system." (Doc. 56-9 at 3.) Further, Day observed areas of damage "that were consistent with unintentional mechanical damage and/or material deficiencies." (*Id.*)

On December 7, 2020, Defendant sent another denial letter to Plaintiffs attaching the Day report and noting that there was no evidence of hail damage to the roof system but other damage, such as age related deterioration, which was not covered under the policy. (Doc. 56-10.)

Plaintiffs filed this action against Defendant on June 8, 2021, alleging claims of breach of contract and breach of the duty of good faith and fair dealing. (Doc. 2-1.) The action was timely removed to this court. (Doc. 2.)

Plaintiffs retained Dallas Kaemmerling as an expert in this matter. (Doc. 69-2.) Kaemmerling is a licensed public insurance adjuster and a general contractor. Kaemmerling physically inspected the property and opined that there is clear hail damage to the roof materials. (*Id.* at 11.) Kaemmerling also saw evidence of isolated granule loss and minor mechanical damage from foot traffic. Kaemmerling opined that the entire roof needs to be replaced due to the hail damage. (*Id.* at 12.)

Defendant moves for summary judgment on Plaintiffs' claims and also seeks to exclude Plaintiffs' expert. Plaintiffs move to exclude Defendant's bad faith expert. The court will address the arguments in turn.

**II.    Standards**

Summary Judgment. Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury

3

could find in favor of the nonmoving party on the evidence presented." *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) (quoting *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015)). Conclusory allegations are not sufficient to create a dispute as to an issue of material fact. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

*Daubert*. Federal Rule of Evidence 702, which controls the admission of expert witness testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under this rule, the district court must satisfy itself that the testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony. *Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1282 (10th Cir. 2018) (*citing United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc)). The district court must first determine whether the witness is qualified by knowledge, skill, training, experience, or education to render an opinion. *Id.* If so, the district court must determine whether the witness's opinion is reliable by assessing the underlying reasoning and methodology. *Id.* at 1283. The court is not required to admit opinion evidence that is "connected to existing data only by the ipse dixit of the expert," and may exclude the opinion if "there is simply too great an analytical gap between the

data and the opinion offered." *Id*. (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). But the rejection of expert testimony is the exception rather than the rule, and "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 596 (1993).

"The court has discretion to determine how to perform its gatekeeping function under *Daubert*." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig*., No. 17-MD-2785-DDC-TJJ, 2020 WL 1164869, at *3 (D. Kan. Mar. 10, 2020) (citing *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019)).

**III.   Analysis**

   **A.  Plaintiff's Expert**

Kaemmerling's report shows that he has been a licensed public insurance adjuster since 2018 and a general contractor for more than ten years. He has adjusted thousands of wind and hail damage claims during his career, has extensive on the job training, and completed continuing education. (Doc. 69-2 at 3, 18.) Kaemmerling personally inspected Plaintiffs' property, which was documented through photographs, reviewed Day's report, reviewed satellite imagery and storm data, and interviewed Plaintiffs. Based on that information and his experience, he opined that a storm event on April 22, 2020, more than likely caused damage to Plaintiffs' property and that the roof needed to be replaced. Kaemmerling also opined on the cost to replace the roof which he estimated using Xactimate software. (Doc. 69-2 at 4.)

Defendant moves to exclude Kaemmerling's opinions on the basis that he is not qualified and his opinions are not relevant nor are they reliable. Defendant also moves to strike the expert disclosure for failing to provide a list of prior cases in which Kaemmerling was a witness.

The most common method of fulfilling this court's gatekeeper function under *Daubert* is by conducting a hearing, "although such a process is not specifically mandated." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000).  In this instance, neither party has requested a *Daubert* hearing.  Moreover, the nature of the opinions expressed, the relative completeness of Kaemmerling's report, and the materials cited lead the court to conclude that the motion can be decided without a *Daubert* hearing.  *Ho v. Michelin N. Am., Inc.*, 520 F. App'x 658, 664 (10th Cir. 2013) (district court permissibly exercised its discretion in ruling without a formal *Daubert* hearing).  Should additional *Daubert* issues arise at trial that require further inquiry, the court will determine at that time how to handle them.  *Cf. Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 772 (10th Cir. 2019) (citing *Goebel*, 215 F.3d at 1087) (finding that "a judge does not abuse his discretion by conducting a *Daubert* hearing in the presence of the jury through direct examination and voir dire.").

The court first addresses Defendant's arguments regarding Kaemmerling's qualifications. Defendant does not seriously contest Kaemmerling's qualifications as to his opinions on whether the property sustained hail damage to the roof.  Rather, Defendant argues that Kaemmerling is not qualified to opine on weather events by reviewing weather data.  In response, Plaintiffs argue that Kaemmerling is not offering his opinion on weather patterns but merely reviewing weather data to confirm that a storm occurred which would cause hail damage to the roof.  (Doc. 68 at 16.) Courts have allowed experts to rely on storm data along with their expertise regarding the condition of the roof "to determine whether plaintiffs' claimed roof damage was caused by a storm," which is what Kaemmerling has done here.  *Revocable Tr. Agreement of Randall S. Ellis & Teri L. Ellis v. State Farm Fire & Cas. Co.*, 614 F. Supp. 3d 963, 988 (N.D. Okla. 2022).  Arguments as to

whether the damage at issue was caused by an April 2020 storm or another storm are better reserved for cross examination.

Next, Defendant argues that Kaemmerling's opinions are not the result of reliable principles and methodology because his report "contains only a brief description of the basis of his conclusory opinions that the property sustained hail damage." (Doc. 57 at 5.) Defendant argues that Kaemmerling has not sufficiently explained how earlier storms can be ruled out from causing the damage, how he ruled out other losses such as wear and tear, and how his training and experience led to his opinions. Defendant's arguments are more appropriate for cross examination. Kaemmerling was retained to testify regarding the cause and scope of Plaintiffs' damages. In his report, he explains that he has significant experience, conducted a thorough investigation, and opined that the roof needs to be replaced due to the storm in April 2020. The report sufficiently explains how he excluded other storm events that occurred. Kaemmerling also explains that he observed evidence of wear and tear, isolated granule loss, and minor mechanical damage but that these damages are distinct from the hail damage which was significant. (Doc. 69-2 at 11.)

After review, the court finds Kaemmerling adequately sets out his methodology and the basis for his opinions. His opinions are reliable pursuant to *Daubert* and will assist the jury. Accordingly, Defendant's motion (Doc. 57) to exclude his testimony is denied.[1]

**B. Brian McCarty**

Defendant moves to exclude the expert testimony of Brian McCarty regarding causation and damages. (Doc. 58.) In response, Plaintiffs state that although they had initially identified

---

[1] Defendant also argued that the report should be struck because Kaemmerling failed to list the cases in which he had been retained in the last four years. (Doc. 57 at 8.) Plaintiffs respond that they have since provided the information and that the failure to disclose was not intentional. (Doc. 68-3) (list of prior testimony). The court finds that Plaintiffs have sufficiently cured any defect and declines to strike the disclosure as there is no evidence that the delay caused any prejudice to Defendant. Defendant has not yet deposed Kaemmerling according to the record. (Doc. 63 at 6.)

McCarty as a potential expert witness they did not disclose him as an expert witness "nor do they intend to rely on him for causation or damages." (Doc. 70 at 1.) Plaintiffs will call McCarty as a fact witness to testify about his assistance with their claim and his observations. In reply, Defendant asserts that McCarty should be limited to lay testimony regarding his observations within the confines of Rule 701. (Doc. 71 at 2.)

Defendant's motion to exclude McCarty from testifying regarding causation and damages is granted. (Doc. 58.) McCarty may testify as a fact witness during trial given his involvement in the claim process subject to the Rules of Evidence.

### C. Breach of Contract

Next, Defendant moves for summary judgment on Plaintiffs' breach of contract claim. To establish a breach of contract, Plaintiffs must show (1) formation of a contract; (2) breach of the contract; and (3) damages as a direct result of the breach. *Digital Design Grp., Inc. v. Info. Builders, Inc*., 24 P.3d 834, 843 (Okla. 2001).

Defendant argues that Plaintiffs have failed to establish a breach because the damages to their roof fell below the policy's deductible. (Doc. 56 at 17.) Defendant cites to the evidence from Ladder Now and Day Engineering in support of their position that Plaintiffs' roof did not suffer damage from hail. Plaintiffs, however, have offered evidence in the form of expert testimony from Kaemmerling which supports a finding that their roof was damaged by hail in the April 2020 storm and must be replaced at a cost of over $50,000. Therefore, there is a genuine dispute of material fact as to whether Defendant breached the contract and the amount of damages.

Defendant's motion for summary judgment on this claim is denied.

### D. Bad Faith

Next, Defendant moves for summary judgment on Plaintiffs' claim of breach of the duty of good faith and fair dealing or bad faith.[2] In Oklahoma, an insurer has a duty to deal fairly and in good faith with its insured. *Christian v. Am. Home Assurance Co.*, 577 P.2d 899, 905 (Okla. 1977). To make a prima facie case against an insurance company for bad faith, Plaintiffs must establish: (1) they were entitled to coverage under the insurance policy; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with Plaintiffs; and (4) the insurer's violation of its duty of good faith was the direct cause of Plaintiffs' injury. *Automax Hyundai S., L.L.C. v. Zurich Am. Ins. Co.*, 720 F.3d 798, 810 (10th Cir. 2013). Plaintiffs bear the burden of proof on each element. *Id.*

Plaintiffs argue that Defendant failed to conduct an adequate investigation and promptly pay their claim. The evidence is that Defendant immediately investigated the claim upon receipt. Ladder Now went out to the property and did an inspection two days after the claim was made. After Plaintiffs objected to Defendants' determination, Defendant hired an engineer to conduct a subsequent determination. That was also done promptly. Although both reports showed some hail

---

[2] In their petition, Plaintiffs cast this claim in terms of "bad faith." (Doc. 2-1 at 6.) However, in their response brief, Plaintiffs speak more in terms of a "duty of good faith and fair dealing." (*See, e.g.,* Doc. 69 at 9.) It may be that Plaintiffs' difficulty in addressing the bad faith claim stems, at least in part, from the confusing manner in which this tort has been described in Oklahoma law. In *McCorkle v. Great Atl. Ins. Co.*, 637 P.2d 583 (Okla. 1981), the Oklahoma Supreme Court addressed the nature and elements of a bad faith claim against an insurer. *Id.* at 587–88. Consistent with most other courts, the Oklahoma Supreme Court described the cause of action as a tort arising when an insurer fails to "deal fairly and act in good faith with its insured." *Id.* at 587. In a proper case, the insurer may be liable for punitive damages. *Id.* at 588. However, over twenty years later the Oklahoma Supreme Court appeared to criticize the language from *McCorkle*, choosing instead to depart from the name "bad faith" and instead revising the terminology to speak in terms of the "breach of the duty of good faith and fair dealing." *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 n.6 (Okla. 2005). That effort at clarifying the cause of action may have done more harm than good. While it seems generally understood that the tort of bad faith addresses this lack of good faith and fairness between an insurer and its insured, long before *Badillo* it was common to observe that contracts often contained an implied covenant of good faith and fair dealing; however, the breach of that obligation was not a tort, but rather a breach of contract for which punitive damages were not ordinarily available. *See H&C Animal Health, LLC v. Ceva Animal Health, LLC*, 499 F. Supp. 3d 920, 940 (D. Kan. 2020). Sticking with "bad faith" in the insurance context seemed to help avoid confusing the insurance tort with an ordinary breach of contract for breaching the covenant of good faith and fair dealing. It appears that perhaps *Badillo* may have complicated things with its switch in terminology. In any event, the court declines to speak in terms of a duty (or a covenant) of good faith and fair dealing in the insurance context, using instead the traditional term "bad faith" to avoid the confusion described herein.

damage to the metal, both reports determined that the roof did not sustain hail damage. Based on Defendant's determination, Plaintiffs sustained minimal hail damage that was below the deductible.

Plaintiffs argue that this investigation was conducted in bad faith because Defendant cherry-picked the evidence it relied on. In support of this argument, Plaintiffs cite to the testimony of McCarty in which he claims that the Ladder Now inspector was inexperienced, took pictures of things that were not hail-damaged, and overlooked and omitted evidence of hail damage. (Doc. 69 at 7.) McCarty, however, was not identified as an expert witness in this matter. Further, McCarty's testimony is that the inspector was inexperienced and not that Defendant itself did not deal fairly with Plaintiff. Plaintiffs have wholly failed to identify what material evidence was overlooked by Defendant in evaluating the claim. Rather, the evidence is that Ladder Now, Day, and Kaemmerling all inspected the property. The fact that they disagree on the extent of the damage does not evidence bad faith. "An insurer's refusal to pay is not unreasonable or in bad faith when there is a legitimate dispute concerning coverage." *Andres v. Okla. Farm Bureau Mut. Ins. Co.*, 227 P.3d 1102, 1107 (Okla. Civ. App. 2009). Although an inadequate investigation can support a bad faith claim, Plaintiffs have the burden to show "that material facts were overlooked or that a more thorough investigation would have produced relevant information." *United States Liab. Ins. Co. v. Paul*, 506 F. Supp. 3d 1154, 1168 (N.D. Okla. 2020) (quoting *Timberlake Constr. Co. v. U.S. Fidelity and Guar. Co.*, 71 F.3d 335, 345 (10th Cir. 1995)). Plaintiffs make no such showing here.

Plaintiffs also argue that Defendant misconstrued the policy by finding that the damage was due to causes other than hail. Defendant's denial letter states that the roof was not damaged by hail and noted that the policy did not cover losses caused by "wear and tear, settling, cracking,

shrinking, expansion, &/or faulty, inadequate or defective installation, design or materials." (Doc. 56-4.) Plaintiffs appear to argue that Defendant misapplied the policy by applying the exclusions when there was evidence that the hail proximately caused the damages even though there was also some evidence of wear and tear. Again, there is a clear dispute as to coverage here. Defendant's engineer determined that the roof was not damaged by hail even though there was some evidence of hail on other parts of the property. Defendant had a legitimate basis to deny Plaintiffs' claim (that hail caused the loss) based on their investigation. Plaintiffs have failed to present sufficient evidence to create a material dispute of fact that insurer did not deal fairly and in good faith with Plaintiffs.

Therefore, summary judgment in favor of Defendant is granted on this claim. As a result of this ruling, Plaintiffs' claim for punitive damages is struck. *See Zenith Drilling Corp. v. Internorth, Inc.*, 869 F.2d 560, 565 (10th Cir. 1989) (Oklahoma law does not allow punitive damages on a breach of contract claim); OKLA. STAT. tit. 23, § 9.1; *Warrenfeltz v. Hogan Assessment Sys., Inc.*, No. 17-CV-428-GKF-FHM, 2018 WL 2324990, at *1 (N.D. Okla. Mar. 29, 2018).

**E. Defendant's Expert**

Plaintiff moves to exclude the testimony of George Adkins. (Doc. 60.) Reviewing the report, Adkins was retained to provide opinions on Defendant's handling of the claim. Adkins' opinions include that Defendant acted in accordance with industry standards, properly investigated the claim, and dealt with Plaintiffs in good faith. These opinions are directly related to Plaintiffs' bad faith claim which has now been dismissed.

Therefore, as Adkins' opinions are not relevant to Plaintiffs' breach of contract claim, Plaintiffs' motion to exclude his opinions is granted.

**F. Motions in Limine**

Both parties have filed motions in limine seeking to exclude certain evidence. (Docs. 59, 61.) With respect to Defendant's motion in limine (Doc. 59), Plaintiffs failed to file a response. Therefore, the motion is granted as uncontested. *See* E.D. Okla. R. 7.1(d).

Turning to Plaintiffs' motion, Defendant objects to Plaintiffs' motion with respect to the admissibility of certain documents and witness bias. The remaining issues identified in Plaintiffs' motion are therefore granted as uncontested.

Plaintiffs seek to exclude "any reference to documents produced by Travelers" on the basis that the documents only reference dates after the loss and are not relevant to any other issue in the case. (Doc. 61 at 3.) Plaintiffs' motion indicates that this would include more than 1500 pages of documents produced in discovery. In response, Defendant argues that these documents include hail damage claims made by Plaintiffs with respect to other properties owned by Plaintiffs and are relevant to the issue of whether there was hail damage to properties in close proximity to Plaintiffs' property at issue in this case. At this time, the court declines to issue a blanket ruling excluding hundreds of pages of documents which have only been generally identified. Plaintiffs' motion to exclude these documents is denied without prejudice.

Next, Plaintiffs seek to exclude any "mention, statement, or comment related to the motivation of any roofer, attorney, or contractor hired by Plaintiffs in connection with its insurance claim and whether such individual had an undue influence in encouraging Plaintiffs to make a claim . . . ." (Doc. 61 at 4.) In response, Defendant indicates that it will not introduce such evidence with respect to Plaintiffs' attorneys but does seek to introduce evidence of McCarty's alleged bias based on his agreement with Plaintiffs to inspect the roofs of their properties for

damage and receive payment for making repairs after payment by the insurance company. (Doc. 67 at 4–5.)

"Proof that a witness is biased—favorably or unfavorably—is 'almost always relevant' to the jury's determination of the accuracy of a witness's testimony." *Wise v. Bowling*, No. 20-CV-00067-JDR-CDL, 2024 WL 578954, at *3 (N.D. Okla. Feb. 13, 2024) (quoting *United States v. Abel*, 469 U.S. 45, 52 (1984) ("Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self interest.")). Plaintiffs' motion is denied to the extent Plaintiffs seek to exclude evidence of potential bias on behalf of any witness. Such evidence is relevant and admissible.

## IV. Conclusion

Defendant's motion for summary judgment (Doc. 56) is GRANTED IN PART and DENIED IN PART for the reasons stated herein. The motion for summary judgment on Plaintiff's claim for bad faith is GRANTED; the motion with respect to the claim for breach of contract is denied. Defendant's motion to exclude Kaemmerling's testimony (Doc. 57) is DENIED. Defendant's motion to exclude McCarty's testimony regarding causation and damages (Doc. 58) is GRANTED. Plaintiffs' motion to exclude Defendant's expert (Doc. 60) is GRANTED. Defendant's motion in limine (Doc. 59) is GRANTED. Plaintiff's motion in limine (Doc. 61) is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED. Dated this 7th day of March 2024.

__ s/ John Broomes_____<br>
JOHN W. BROOMES<br>
UNITED STATES DISTRICT JUDGE